## Siegel, Cooper & Co. v. Peter Becker.

1. NEGLIGENCE — *Heedlessness on the Part of the Plaintiff.* — An employe can not recover for an injury which is the result of his heedlessness.

Action in Case, for personal injuries. Trial in the Circuit Court of Cook County; the Hon. RICHARD W. CLIFFORD, Judge, presiding. Verdict and judgment for plaintiff; appeal by defendant. Heard in the Branch Appellate Court at the October term, 1898. Reversed and remanded. Opinion filed July 11, 1899.

JOHN A. POST and JOHN B. BRADY, attorneys for appellant.

GEO. WILLARD and SMITH & WRAY, attorneys for appellee.

MR. JUSTICE SHEPARD delivered the opinion of the court.

The firm of Mohr & Sons was engaged in making repairs to a boiler in the basement of appellant's store, and had in use there a tool or machine called an expander. The appellee was an employe of theirs at work upon a different job in another part of the city, in the prosecution of which the expander was needed. His boss sent him to get it. Arriving at appellant's store he got a ticket which permitted him to go to the boiler room, and was directed to take an elevator down to the basement. He had never before been in the store. He inquired of and was told by the elevator man the direction to take to reach the boiler room, and after some further directions by other persons, he found it. The

expander being needed where it was, he started away without it.

His course to the boiler room was the proper one, through the shipping room and carbon room into a little anteroom, about six feet by eight feet in floor dimensions, and thence into and along a passageway about seventy feet on the east side of the main engine room and separated from it by a railing, and thence through a doorway directly into the boiler room.

Upon returning, he took the proper course down the long passage at the side of the main engine room and into the little anteroom, but instead of turning to the right and going into the carbon room, he passed straight ahead through a doorway and went into a space behind three freight elevators and the engines that operated them, intended for none but machinery employes. This space was about five and a half feet wide, one side of which was the east wall of the building, and extended along behind the elevator engines, which in turn were behind the elevators that on the other side opened into the shipping room. The elevators and engines were all in one four-sided enclosure, having openings without doors from the elevators into the shipping room. The space behind the engines, into which appellee entered, was opened into through two doorways—one at either end—and appellee entered through the north one. From where he stood, appellee looked past an engine and across the pit of the northernmost elevator, a distance of about eighteen feet, into the shipping room, and being in a hurry to get back to his job, he started to reach the shipping room through the space through which he had looked.

Close by the engine stood one of the large pillars that support the building, and he passed between that pillar and the engine, and stepped into an elevator pit which lay between the engine and pillar and the shipping room. This pit was about twelve inches in depth and about six feet by ten feet in surface dimensions.

While going across this pit the elevator descended upon

him and caused the injuries on account of which he brought this suit.

· The space between the pillar and engine through which appellee passed was about twenty-one inches wide, above the base of the pillar, by about three feet long. At the base, where the foot of a person passing would rest, the width of the space between base of pillar and engine was only six inches.

It was through this narrow space that appellee passed before stepping into the pit. The side of the pit opposite to that from which appellee entered, opened into the shipping room.

The testimony of appellee and some others who testified, place the width of the space through which appellee passed between the pillar and engine as greater than we have stated, while other witnesses make it less, but we have accepted the admittedly correct "blue print" that is in evidence, as entitled to controlling weight.

The declaration does not charge any negligence by reason of insufficient lighting. The evidence is plain that the part of the basement traversed by the appellee was abundantly lighted by arc and incandescent electric lights, and he testifies that his eyesight was good.

We are wholly unable to discover from the record wherein the appellant was negligent in any duty it owed to the appellee. It is plain that from the time appellee started to go past the engine and across the pit, the only duty appellant owed him was not to wantonly injure him. Granting that appellee was rightfully upon the premises and behind the elevators, it was his duty to take such care for his own personal safety as an ordinarily careful and prudent person would take under like circumstances.

The case is not that of a person who, in the presence of impending peril, either seeming or real, mistakenly acts and becomes injured. But here is a man nearly sixty years old, in full possession of his faculties, and accustomed to noise and machinery, as he must have been from his occupation as boiler maker, who had passed through the basement into

the boiler room by an open and perfectly safe route, only a few minutes before. Returning, he had the same route before him to traverse, and did in fact traverse it until he came into the little anteroom at the rear of the carbon room. Then, instead of turning to the right and going into the carbon room, he went straight ahead through a different door and entered into the space behind the freight elevators.

The inference from appellee's testimony is, that as soon as he got behind the elevators he recognized he was in a place through which he had not passed when he was on his way to the boiler room, and from the very nature of his surroundings he must have known it was so.

But instead of retracing his steps a few feet, as any ordinarily prudent person would have done, he undertook to pass out through the narrow opening he saw between the pillar and the engine that led into the elevator pit. That his so doing was not the act of an ordinarily prudent person, does not appear to us to be susceptible of two opinions. No person may under such circumstances so act and recover damages for the consequences of his heedlessness.

Reasonably fair-minded persons should not differ from the conclusion that appellee brought the injury upon himself by his own negligence. And this conclusion is the same whether there had been a substantial compliance with the city ordinances respecting the guarding of elevators, or not. The Circuit Court should have granted appellant's motion for a new trial.

The judgment will be reversed and the cause remanded.
Reversed and remanded.