## Stover Manufacturing Co. v. Henry Millane, Adm., etc.

1. NEGLIGENCE—*Equipment of Elevators.*—In a suit to recover for the death of an employe of defendant by the falling of a freight elevator in defendant's shops upon the breaking of the cable by which it was suspended and operated, evidence is competent that it has long been customary among builders and operators of elevators to equip them with a safety device, calculated to prevent sudden falling, and that the elevator in question, built by defendant, had no such device.

2. INSTRUCTION—*Stating Inapplicable Rules of Law.*—It is error to give an instruction stating a correct rule of law, if it is inapplicable to the case made, and is calculated to mislead the jury as to the proper rule in the case on trial.

3. SAME—*Master's Liability for Injuries Resulting from Dangers Not Assumed.*—It is error to instruct the jury that the master is liable to his servant for injuries resulting from dangers of the business not assumed by the servant. It must further appear that the master was negligent as charged and that the servant exercised due care.

4. SAME—*When Compensation is the Measure of Damages.*—Where compensation is the measure of damages it is error to instruct that the jury may award what damages they think plaintiff entitled to receive.

5. SAME—*Assuming Matters Not Proved.*—Instructions are erroneous which assume facts which are in dispute or are not proved.

6. SURPLUSAGE—*May Be Stricken Out on Motion.*—Where a good count or plea contains surplusage, the usual course is to disregard the

superfluous matter; but it may be stricken out on motion, if scandalous or impertinent, or clearly surplusage.

7. WAIVER—*By Pleading to a Count after Denial of a Motion to Strike it out.*—Pleading to a count after denial of a motion to strike out alleged surplusage therein, waives the motion.

**Action on the Case.**—Death from negligent act. Appeal from the Circuit Court of Stephenson County; the Hon. JAMES SHAW, Judge, presiding. Heard in this court at the April term, 1900. Reversed and remanded. Opinion filed June 8, 1900.

J. H. STEARNS, attorney for appellant.

D. & T. J. and J. M. SHEEAN, attorneys for appellee.

MR. JUSTICE DIBELL delivered the opinion of the court.

The Stover Manufacturing Company has a factory at Freeport. In its machine shop it had an elevator, made by itself, running between the first and second floors, to carry heavy articles. It was operated by steam power, applied to a cable by which the elevator was suspended. The cable was looped around the carrying bars of the elevator, and fastened to itself by a clamp around the cable, held by two steel bolts. At the side of the elevator, on the first floor, were rods or levers, by pulling one of which a bell was rung, giving warning that the elevator was about to move, and by pulling the other the elevator, if stationary, would be set in motion. While the elevator was descending a bell rang continuously, and it descended so slowly that a person standing under it would have ample time to get from under it without harm after the bell gave warning. The elevator moved within four upright posts. There was a bar across the entrance to the elevator shaft, but while the elevator was in constant use the bar was often put up out of the way. Patrick Millane, nearly twenty years old, was a common laborer in said factory, and had been working there a month and a half. On June 29, 1899, he and another boy, sixteen years old, were directed to take a bundle of wire from the second story to the yard, and bring back another. They took the bundle down on the elevator, carried it into

the yard, got the other and brought it to the elevator. Some one had used the elevator while they were in the yard, and it stood at the second story. They wished to signal for it and start it down. Whether the bar was in or out of place does not appear. Instead of going around the elevator shaft to reach the levers Millane passed directly under the elevator. At that instant one of the bolts in the clamp, by which the cable was fastened to the elevator, broke, the clamp opened and released the cable, and the elevator fell upon Millane, killing him instantly. His father was appointed administrator of Patrick Millane's estate, and brought this suit for the benefit of the next of kin, to recover for their pecuniary injuries resulting from such death. Defendant pleaded not guilty, and on a trial plaintiff recovered a verdict and a judgment for $1,050, and defendant appeals.

There was evidence tending to show it had for many years been customary among builders and operators of elevators to have such elevators equipped with a safety device, calculated to prevent the sudden falling of the elevator if the cable broke. We think the evidence heard upon that subject was in the main competent. (McGregor v. Reid, Murdock & Co., 178 Ill. 464.) This elevator had no such device. Defendant was not bound to use the safest device or to adopt every new invention, but if the jury found there was a customary and usual safety appliance, it would be a question for the jury whether, under all the facts in evidence, the absence of any such appliance from this elevator constituted negligence by the defendant.

There was no evidence that the duties of deceased or any other employe required him to work under or to be under the elevator at any time for any purpose. The proof showed the customary place from which to operate the levers was outside the elevator shaft. Wiegert, Millane's foreman, testified he saw Millane go under the elevator a week or two before the accident, and told him to keep out from under the elevator. Stuckenberg testified that for four weeks before the accident Millane had been with him when

he summoned the elevator from ten to twenty-five times
every day; that in doing so he always stood outside the
elevator shaft, and never went under the elevator; that he
had always warned Millane about going under the elevator,
and had often told him to let the elevator alone.    This wit-
ness was absent the day Millane was killed.    Waldecker
testified he had seen Millane go under the elevator to ring
the bell, and had told him he had better stop going under it,
—that there might be an accident some time and kill him.
Fosdick testified he saw Millane going through under the
elevator the morning of the accident, and told him to be very
careful about going through under it, and that he had warned
Millane three or four times before.    Kobow testified he had
spoken to Millane twice about going under the elevator
within two weeks before he was killed, and a week before
had said to him, " My boy, you want to keep out from
under that elevator, and you want to ring the bell when
you want to use the elevator, or you will kill somebody or
get killed yourself."    This testimony strongly tended to
show Millane was guilty of negligence directly contribut-
ing to his death.    (Siegel, Cooper & Co. v. Becker, 83 Ill.
App. 600.)

In this state of the evidence it was important the jury
should be properly instructed.    Plaintiff's first instruction
stated the duty of the master to use reasonable care and
diligence to furnish his servants a reasonably safe place in
which to work, and that a failure to do so made him liable
to the servant for injuries resulting therefrom while the
servant was exercising due care; and that if defendant
failed to exercise such care to provide such a place for Mil-
lane, and as a result he was killed while exercising reason-
able care, they should find defendant guilty.    This was the
law in a case to which it was applicable, but was not war-
ranted by the proofs here.    There was no proof the position
in the elevator shaft under the elevator was a place wherein
Millane or any other employe had any work to do, or had
any occasion to be.    The position under the elevator was not
a safe place, and could not be made so.    The jury were likely

to understand from the instruction that if that was not a safe place plaintiff could recover on that account. Plaintiff's second instruction stated it was the duty of the master to employ, for work known to him to be dangerous, only persons who understood the dangers; and that if Millane did not understand and appreciate the dangers incident to his duties he did not assume the hazards, and "defendant is liable for damages resulting therefrom." Passing by the question whether the proofs justified the first part of the instruction, it is not the law that the employer is necessarily liable to the employe for all dangers resulting from risks not assumed by the latter. To authorize a recovery it must further be found that the employe has exercised due care for his own safety, and that the master has been negligent as charged. If Millane did not exercise due care there could be no recovery, even if his death was not caused by an assumed risk. If the falling of the elevator was a mere accident, and not attributable to any negligence of defendant, there could be no recovery. Plaintiff's third instruction (as also the fifth) authorized the jury, if they found for plaintiff, to assess the damages " at whatever sum you find from the evidence plaintiff is entitled to receive." This is improper for reasons stated in our opinion in La Porte v. Wallace (*ante*, page 517), as compensation is the measure of damages, and this permits punitive damages. The third instruction also repeated the error in the first about the master furnishing the servant a reasonably safe place in which to work. Both assumed the space in the elevator shaft under the elevator was a place furnished by the master in which deceased was to work. Plaintiff's fourth instruction authorized a verdict for plaintiff without proof deceased was exercising ordinary care. In view of the grave doubt arising from the evidence whether deceased was not guilty of such contributory negligence as precludes a recovery, these errors require a reversal.

Many of defendant's instructions invaded the province of the jury, and were otherwise incorrect, and might have required a reversal if defendant had succeeded below. We

refer to this merely to invite greater caution in the preparation of the instructions at the next trial.

It is assigned for error that the court denied defendant's motion to strike out various clauses of the fourth count of the declaration.    The proper mode of questioning the sufficiency of a pleading at law is by demurrer.   (Consolidated Coal Co. v. Peers, 166 Ill. 361; Bemis v. Horner, 145 Ill. 567.)   If the count or plea is good, but contains surplusage, the usual course is merely to disregard and reject from consideration the superfluous matter.   (Lusk v. Cook, Breese, 84; Higgins v. Halligan, 46 Ill. 173.)    Still such allegations may be stricken out on motion.   (Burnap v. Wight, 14 Ill. 301.)   But this should only be done where the matter is scandalous and impertinent, or is clearly surplusage.   (Heard's Civil Pleading, 309.)    So far as the clauses in question were descriptive of the condition of the elevator shaft or of deceased's lack of knowledge or capacity, the action of the court was plainly correct.   If the fourth count alleged defendant's duty too strongly, that was but the conclusion of the pleader, and so far as incorrect could be disregarded at the trial.    Besides, defendant afterward filed the general issue, thereby admitting the legal sufficiency of the fourth count and waiving its motion as completely as such plea would waive a prior demurrer.    The judgment is reversed and the cause remanded.