*(Superior Court of Cook County.)*

### The People of the State of Illinois ex rel. William A. Bartlett, A. Lincoln Shute and Robert J. Bennett

vs.

### Edward F. Dunne, as Mayor of the City of Chicago, and Michael Kenna.

(January 8, 1907.)

PLEADING—IRRELEVANT, IMPERTINENT AND IMMATERIAL MATTER— MOTION TO STRIKE. Where a pleading contains improper, irrelevant, or impertinent matter, the proper practice is to file a motion to strike.

(January 30, 1907.)

MOTION TO STRIKE—PETITION FOR MANDAMUS. Where a petition for *mandamus* contains irrelevant, argumentative and repug-

nant matter, and matters of evidence, none of which enabled
the petitioners to introduce any evidence which could not be
introduced in the case without such allegations, a motion to
strike should be sustained.

Petition for mandamus. Motions of defendants to strike
out certain portions thereof. Motion of relators to strike
motions to strike from files. The portions of the petition to
which the motions to strike were addressed appear in italics
in the statement of facts. Heard before Judge Axel Chytraus.

Gen. No. 258,128, Term No. 16,128.

*Messrs Church, McMurdy & Sherman,* and *Walter J. Miller,* for relators.

*Levy Mayer* and *J. Hamilton Lewis,* corporation counsel,
and *Daniel P. Murphy,* assistant corporation counsel, for respondents.

## Statement of Facts.

The petition alleged the following:

Your petitioner, the People of the State of Illinois, upon
the relation of William A. Bartlett, A. Lincoln Shute and
Robert J. Bennett humbly complaining, represents unto your
honors,

### I.

That the relators above named are citizens of the city of
Chicago, in the county of Cook and state of Illinois; *that
they have resided in said city for more than one year last
past, and that they are all interested in the peace and good
name of said city and in the maintenance of law and order
therein and in the cultivation thereby of a more general respect for the law, and that in particular they are interested
in securing the observance of and obedience to the laws of
the state requiring the closing, on the first day of the week,
commonly called Sunday, of all tippling houses and places
where liquor is sold or given away.*

## II.

That heretofore, to-wit: at the regular election for mayor of the city of Chicago held in said city on the 4th day of April, A. D. 1905, Edward F. Dunne was duly elected as mayor of said city for the full term of two years; that afterwards, to-wit: on the 10th day of April, 1905, the said Edward F. Dunne took the oath of office, as mayor of said city, prescribed by section 4 of article VI of chapter 24, of the Revised Statutes of this state, and duly qualified as such mayor, and thereupon then and there entered upon the discharge of the duties of said office, and ever since has been and is now the mayor of said city.

## III.

That there were heretofore duly enacted by the city council of the city of Chicago, certain ordinances of said city, hereinafter more particularly mentioned, which at the time said Edward F. Dunne assumed his office as said mayor were and still are in full force and effect in said city and which now form a part of the official compilation of the ordinances or said city made under the authority of the city council, known and designated as the Revised Municipal Code of Chicago of 1905, adopted by ordinance passed by said council March 20, 1905, and then and there duly approved by the then mayor of said city and afterward, to-wit: April 15, 1905, printed and published in book form by and under the authority of the said city council of said city; which ordinances, as hereinafter referred to, will be designated by the section numbers of said Revised Code, *to-wit*:

*Section 1731. Establishes an executive department of the municipal government of said city which shall be known as the department of police and shall embrace the general superintendent of police, an assistant general superintendent of police, a secretary of the department of police, a private secretary to said general superintendent, one inspector of police for each police division, one captain of police for each police district and such number of lieutenants, detective ser-*

geants, patrol sergeants, desk sergeants, patrolmen and other employees as may be provided by ordinance.

Section 1732. Creates the office of general superintendent of police to be appointed by the mayor by and with the advice and consent of the city council.

Section 1737: Prescribes that the general superintendent shall devote his whole time to the municipal affairs of the city, to preserve the peace, order, safety and cleanliness thereof and to this end shall execute and enforce all ordinances and orders of the city council and the orders of the mayor.

Section 1740: Provides that said general superintendent shall from time to time divide the city into police divisions, districts and precincts and assign inspectors, captains and lieutenants of police respectively, to such divisions, districts and precincts and that all regulations and orders of the department of police shall be promulgated through the general superintendent.

That in pursuance of the foregoing ordinances general superintendents of police have from time to time been appointed by the respective mayors of the City of Chicago, the other officers and members of the said police force prescribed thereby have also been appointed, the said city divided into police divisions, districts and precincts, to-wit: five divisions, fifteen districts and forty-four precincts, and a large police force established and created, including a general superintendent, an assistant general superintendent and five inspectors, fifteen captains, forty-four lieutenants, assigned and distribtued in accordance with said ordinances, and a large number, to-wit: Three thousand sergeants, patrolmen and other officers and employees.

That at the time the said Edward F. Dunne assumed the duties of the office of mayor of the City of Chicago, as aforesaid, there was and still is in said city, engaged in the active performance of its duties therein, such police force as is above described, with a general superintendent and the various other officers, patrolmen and employees aforesaid, and that shortly after assuming the duties of the office of said mayor

*as aforesaid, the then general superintendent of police having resigned, the said Edward F. Dunne, in pursuance of the authority conferred upon him by said ordinance, did, by and with the advice and consent of the city council of said city, appoint a general superintendent of police, who ever since has been and now is holding and exercising the duties of said office under the direction of said mayor.*

## IV.

That before and at the time when said Edward F. Dunne assumed as aforesaid his duties as mayor of said city, there were and ever since have been and are now in full force and effect in said city, certain *other* ordinances of said city, now comprising part of the said Revised Municipal Code of 1905, hereinabove mentioned, to-wit: (reference being made thereto by the section numbers of said code as aforesaid):

Section 1336, which provides for the granting by the mayor of said city, of licenses for the keeping of saloons or dramshops within said city upon certain conditions therein prescribed.

Section 1337, which prescribes among other things, that no license for the keeping of any saloon or dram-shop shall be granted unless the applicant for such license shall agree in such application to comply with all the regulations and conditions imposed by the laws of the state of Illinois, and the ordinances of the city in force at the time of making such application, or that may thereafter be passed, relating to or concerning in any manner saloons or dram-shops, the conduct, management and maintenance of same and the sale or disposal of intoxicating liquors, and shall also agree in such application that if the mayor shall be satisfied that at any time during the period of such license any such liquor is being so sold, served or given away in such saloon or dram-shop contrary to and in violation of the agreements made in such application, in such case the mayor may forthwith revoke such license, and that the license fee paid therefor shall be forfeited to the city.

Section 1338, which is as follows: Every place where spirituous, malt, vinous or intoxicating liquor of any quantity whatsoever is sold, given away or otherwise disposed of in quantities of less than one gallon, whether consumed, or to be consumed, upon the premises or not, and whether sold, given away or disposed of in any grocery store, department store, liquor store or other place whatever, shall be deemed and is hereby defined to be a dram-shop, and is hereby required to be licensed in accordane with the provisions of this article, and that no person shall keep, conduct or maintain any such place unless he be licensed so to do, in accordance with and pursuant to the provisions of this article.

(The words "this article" in the foregoing section, meaning article 1 of chapter XXXVI, of said code, of wihch sections 1336, 1337, 1338, 1339, and 1340, are a part.)

Section 1339, which provides that any person, on compliance with the aforesaid requirements and the payment in advance to the city collector of a license fee at the rate of five hundred dollars per annum, shall receive a license under the corporate seal and signed by the mayor and attested by the city clerk, which shall authorize the person or persons therein. named to keep a dram-shop or saloon and to sell, give away or barter intoxicating liquors in quantities less than one gallon in the place designated in the license and for the period stated therein.

Section 1340, which provides that the saloon license year is divided into two periods as follows: from May 1 to October 31, inclusive, shall be known as the first period; from November 1 to April 30 shall be known as the second period, and that licenses may be issued for the full license year or for the unexpired portion thereof, or for any period or the unexpired portion thereof.

Section 1324, which is as follows: In all cases where licenses are required to be procured, such licenses shall be granted by the mayor, attested by the city clerk, except where provision is expressly made for the granting of licenses by some other officer of the city. The mayor shall also have power to revoke for cause, any license granted by him.

## V.

Your petitioner says that on or about November 1, 1906, Michael Kenna was by the mayor of said city of Chicago granted two licenses for the keeping of a saloon or dram-shop within said city in one of which said privilege was granted for the premises known as number 279 South Clark street and in the other of which such privilege was granted for the premises known as number 300 South Clark street, both in said city of Chicago, from the period beginning November 1, 1906, and ending on April 30, 1907, and that under said licenses said Kenna has been keeping a saloon or dram-shop and tippling house at both of said places and which said licenses are still in force.

## VI.

And your petitioner further shows that in the conduct and operating of said saloons or tippling houses by said Kenna ever since the issuance of said license the law of the state of Illinois, prohibiting the keeping open of tippling houses and other places where liquor is sold or given away, upon the first day of the week, commonly called Sunday (hereinafter referred to as the Sunday closing law, by which name said law is commonly known and designated) has been and is habitually, openly and notoriously violated and disregarded by him *and that no pretense is made by him of obeying or observing said law,* but said saloons are habitually kept open and in full operation, and intoxicating liquors are therein sold and dispensed *as* freely and openly on Sundays *as upon other days of the week* and that no attempt whatever has been or is made by said Edward F. Dunne as mayor of said city, either by or through the *said* police department of said city or in any other way, to enforce or compel the observance of the said law or to prevent the violation thereof by said Kenna, or to punish or secure his punishment for violating the same, either by revocation of his licenses or in any other manner, *and petitioner charges that it is the intention of said Kenna to continue to and that he will dis-*

regard and disobey said law in the operation by him of said saloons as long as he is permitted by said mayor to do so.

## VII.

And our petitioner shows and charges specifically that the said Edward F. Dunne, during the course of his campaign for election as mayor of said city, openly and publicly declared to the people of the City of Chicago, and especially to the voters thereof, that if elected to the office of mayor of said city he would not enforce the said Sunday closing law, nor take any steps or measures to compel the observance thereof; that said declaration was made as a campaign pledge or promise after a similar declaration had been publicly made by his chief opponent, a rival candidate for said office; and that since that Edward F. Dunne has entered upon the duties of his said office he has on several occasions openly and publicly repeated said declaration either directly or by specific reference to his said previous declaration; that on several occasions since his election many citizens of Chicago, individually and as delegations or representatives of various civic organizations in said city interested in the welfare and good order thereof, have called upon him and requested him to enforce said Sunday closing law, and that on every such occasion he has refused to do so, either expressly or by reference to his said previous declaration; and your petitioner shows in particular that heretofore, to-wit: on the 11th day of September, 1905, relator William A. Bartlett with several other citizens of Chicago called upon said mayor and requested him to take measures for enforcing said Sunday closing law and inquired of him as to his intentions in that behalf, and that said mayor in reply to such requests and inquiries, then and there referred to the said declaration made by him as aforesaid during his said pre-election campaigning, saying that he had then stated his position on the question clearly and that he saw no reason now why he should change his position.

## VIII.

And your petitioner shows and charges that the said mayor has had full notice and knowledge of the said open and no-

torious habitual violation of said Sunday closing law by the said Michael Kenna, that he has *full and ample means through the police force of said city, of ascertaining and keeping informed of such violations of said law, and full power and authority to enforce the observance thereof by said Kenna and to punish and secure his prosecution and punishment for violating the same and that his failure to execute said law and to compel the observance thereof by said Kenna is not because of any lack of knowledge on his part of such violation of said law, nor because of any lack of means or power or authority on his part to compel the observance of said law by said Kenna or to punish and cause him to be punished for his said violations thereof but because, as your petitioner is informed and believes and charges and as clearly appears from his declaration aforesaid, it is his deliberate intention not to take any action in the matter of compelling the observance of said law, or preventing its violation, or punishing or causing to be punished the violators thereof, and because he is willing and intends to permit said Kenna to continue openly and publicly to disregard and violate said law, and to habitually keep his saloons or tippling houses open on Sundays.* And your petitioner alleges that, unless compelled by the mandate of this court to perform his duty in that regard, the mayor will hereafter continue to permit said Kenna wholly to disregard said Sunday closing law, and habitually to keep his said saloons open and to dispense liquors therein on Sundays, and will wholly fail and refuse to perform his duty in that regard or to take any steps or measures to compel obedience by said Kenna to the said Sunday closing law of this state or in any wise to prevent or punish or prosecute him for the violation thereof.

*That on the thirteenth day of December, 1906, the following notice and request in writing was given to said Edward F. Dunne as mayor as aforesaid, viz:*

*"Chicago, December 13, 1906.*
*"To the Honorable Edward F. Dunne,*
*"Mayor of the City of Chicago,*
*"City Hall, City.*
*"We respectfully call to your attention the fact that the*

saloons or dram-shops of Michael Kenna at Number 279 South Clark street and at Number 300 South Clark street, in said city of Chicago, are and have been for six weeks and more last past operated under licenses issued to said Kenna in his name; that said saloons or dram-shops are tippling houses; that said tippling houses are habitually kept open on Sunday and each and every Sunday contrary to the laws of Illinois.

"As you are aware, the statute of this state imposes a penalty on everyone keeping such a place open on Sunday, thereby making the act unlawful, and we respectfully urge and request you, as mayor of this city, charged by law with the duty of seeing that the laws are obeyed, to enforce this statute against said Kenna and to compel his obedience thereto by such means as are at your command.

"In this regard we call your attention to the fact that in other cities where the Sunday closing law has been enforced, a large decrease in crime has been shown by the public records and a great change for the better in the matter of peace and good order has resulted.

"We assume to make this request, also, in behalf of the wives and families of the laboring classes, many of whom are now compelled to endure a life of hardship on account of the open Sunday saloon, which not only absorbs a large proportion of the weekly wage but also deprives them of the companionship of husband and father on the only day of the week on which such companionship is possible.

"A. Lincoln Shute,
"Walter J. Miller,
"Respectively the chairman and secretary of the Executive Committee of the Sunday Closing League."

but that notwithstanding said notice and request, both of said saloons were kept open on the next succeeding Sunday, to-wit: on the sixteenth day of December, 1906, and intoxicating liquors were freely and openly sold and dispensed therein without interference by the said mayor or the police of said city.

## IX.

*And your petitioner further shows and charges that not only does such failure and refusal on the part of the mayor constitute a neglect and violation by him of the duty imposed upon him by law, but that his declarations that he would not enforce the said Sunday closing law are in effect an invitation to the violation thereof, and greatly tend to promote and encourage in the community a spirit of lawlessness and of want of respect for the laws of the state and for those who as public officials are charged with the administration thereof, and that by reason of the premises, the peace, good order and morals of the city of Chicago are greatly impaired.*

## X.

That because of the interest of said Michael Kenna in the event of this proceeding, he is made a party defendant thereto.

Wherefore your petitioner prays that this court issue its writ of mandamus against the said defendant, Edward F. Dunne as mayor of the city of Chicago and his successors in office, enjoining and commanding him and them without delay, and by the use, so far as may be necessary for the purpose of every means, power and authority in that behalf conferred upon the mayor of said city by the law of this state or the ordinances of the city of Chicago to proceed, and thenceforth to continue to enforce against said Michael Kenna as the proprietor of said saloons at numbers 279 and 300 South Clark street in said city of Chicago the statute of this state prohibiting the keeping open upon the first day of the week called Sunday, of tippling houses and other places where liquor is sold or given away (commonly called the Sunday closing law) by closing or compelling him to close and keep the same closed on each and every Sunday thereafter and in case of his refusal to obey the law in that behalf to secure his prosecution therefor and to punish such violation of said law by the revocation of his licenses; and that such other and further order may be made in the premises as the court shall deem just and necessary.

The affidavits of the relators are attached to the petition.

The respondents each filed a motion to strike from the petition those portions thereof which are indicated by italics. The grounds of the motions were as follows:

(a) That each of said portions of said petition respectively consists of allegations of matters of evidence and does not present issuable allegations of fact.

(b) That each of said portions of said petition respectively consists of allegations of items of evidence or of mere statements of evidence.

(c) That each of said portions of said petition respectively consists of inferences of law drawn from the facts or matters of evidence alleged.

(d) That each of said portions of said petition respectively consists only of conclusions of law.

(e) That each of said portions of said petition respectively contains only an allegation or allegations of law.

(f) That each of said portions of said petition respectively is irrelevant.

(g) That each of said portions of said petition respectively is immaterial.

(h) That each of said portions of said petition respectively is surplusage.

(i) That each of said portions of said petition respectively is impertinent.

Thereafter the relators filed a motion to strike from the files respondents' motions to strike. On January 8, 1907 this motion was denied, the court rendering the following opinion:

CHYTRAUS, J. (orally):—

I am of the opinion now, as I have been all along, the proper practice is in any state where the common law prevails, to reach matter that is immaterial or improper, is by motion to strike out. It is, in my judgment, the best and most orderly way by which to reduce pleadings to a single issue, or reduce questions to a single issue.

This case of the *Chicago & Eastern Illinois Railroad Com-*

*pany v. O'Connor,* 119 Ill. 586, while to an extent it sustains the contention of the petitioner here, yet I don't think it is an authority in point. It appears that the supreme court there made a remark as to what the proper practice was, without reference to any authority at all, and then the remark was very much modified by the language that follows, where the court says that there was no prejudice by the procedure followed. These other cases cited by Mr. Mayer, I think, are about of the same kind. I do not think in any one of them, so far as I have observed, the question was squarely before the court, that is, the particular proposition was not the one upon which the decision hinged. So I do not think that the old common-law practice has been changed or altered in respect to a motion to strike being the proper way in which to reach improper, irrelevant or impertinent matter, and the court holds accordingly, that is, the motion will be entertained. As to the merits of the motion in this particular case, I believe, and you gentlemen both agree, it will take some time to argue it, and you both want to be heard at length.

On the merits of respondents' motions to strike the following opinion was rendered January 30, 1907.

CHYTRAUS, J. (orally) :—

I believe in the strict enforcement of the rules of pleading, as I believe in the strict enforcement of the laws of our state. The courts have nothing to do with the policy or with the wisdom of the laws; and, I doubt if the court has anything to do with the rules of pleading. The rules of pleading that require him to strike from the record irrelevant, argumentative and repugnant matter, I think are good rules of pleading. If any one of these averments were necessary to enable this petitioner to introduce any evidence or any line of evidence competent in a case of this character, then as to such averment the motion to strike out should be overruled; but I fail to notice that any one of these averments that are objected to would enable the petitioners to introduce any evi-

dence that could not be introduced in the case without it; so I feel obliged here to sustain the motion to strike out.

I feel that this is a case of great importance, and may involve fundamental propositions and constitutional matters, and I do not want you gentlemen on either side to believe for a moment that I regard the matter lightly, because I do not. This point has been very ably argued by competent counsel on both sides and I am disposing of it in this way because I think that is the way to dispose of matters; but, because I dispose of it immediately, I do not want you to think that I regard any of these matters trivial.

### NOTE.

A motion to strike out is the proper method of ridding a pleading of impertinent, immaterial or irrelevant matter or that which is surplusage. *Siever v. People*, 45 Ill. 224, 227; *Burnap v. Wight*, 14 Ill. 301, 303; *Stover Mfg. Co. v. Millane*, 89 Ill. App. 532, 537; *Consolidated Coal Co. v. Peers*, 166 Ill. 361; 14 Ency. Pl. & Pr. 79 and note p. 80; 21 Ency. Pl. & Pr. 221. But see *C. & E. I. R. R. Co. v. O'Connor*, 119 Ill. 586.—Ed.