JOHN M. WEST, Adm'r of the Estate of Willie D. West, Plaintiff-Appellant, v. MARTIN BOEHNE *et al.*, Defendants-Appellees.

Second District   No. 2—91—0964

Opinion filed June 17, 1992.

Robert A. Clifford, Keith A. Hebeisen, and Jeffrey J. Kroll, all of Robert A. Clifford & Associates, of Chicago (Robert P. Sheridan, of counsel), for appellant.

Michael C. O'Neill, of Law Offices of John R. Wienold, Ltd., of Aurora (John R. Wienold, of counsel), for appellee.

JUSTICE McLAREN delivered the opinion of the court:

Plaintiff, John West, as administrator of the estate of Willie West, appeals from a jury verdict in the circuit court of Kane County favoring defendant, Martin Boehne, in a negligence action arising out of a collision between decedent's step van and a field cultivator being towed behind a tractor driven by Boehne. Plaintiff's sixth amended complaint alleged that the wrongful death of decedent resulted from Boehne's negligence. The alleged liability, if any, of the other remaining defendants was due to the principle of *respondeat superior*. Because we determine Boehne is not liable, we need not discuss the other defendants' liability. The issues raised on appeal are: (1) whether the trial court erred in not directing a verdict for plaintiff or granting plaintiff's motion for judgment *n.o.v.*; (2) whether the verdict is contrary to the manifest weight of the evidence; (3) whether plaintiff was denied a fair trial by misleading defense arguments, and the trial court's failure to prohibit them; (4) whether plaintiff was denied a fair trial because he was erroneously barred from presenting his theory of liability; (5) whether plaintiff was denied a fair trial by the trial court's admonitions to a plaintiff's witness; (6) whether plaintiff was denied a fair trial by an improper jury instruction; and (7) whether plaintiff was denied a fair trial by the court's sending in a *Prim* charge before it appeared that the jury was deadlocked, and without consultation with counsel for the parties. (*People v. Prim* (1972), 53 Ill. 2d 62.) We affirm.

On May 31, 1986, Willie West was driving a step van in an easterly direction on Route 38, a two-lane highway in rural Illinois.

Boehne, driving a tractor with an agricultural field cultivator in tow, was proceeding in the opposite direction on Route 38. West's step van and Boehne's field cultivator collided as they passed each other on a bridge. West died as a result of the accident. The walls of the bridge are 3 feet 10 inches in height. The width of the road spanning the bridge is approximately 30 feet from curb to curb. The respective lanes measure 11 feet 8 inches from the outer fog line to the inner double yellow lines leaving approximately 3 feet 4 inches from the outer fog line to the curb.

West's step van was 6 feet 6 inches wide and 17 feet 9 inches long. The tractor driven by Boehne measured approximately 12 feet wide and approximately 12 feet high. The cultivator measured 16 feet 9 inches wide when in transport mode and approximately 8 feet high. Boehne testified that his rate of progress over the bridge was approximately 10 miles per hour. The maximum speed of the tractor without the cultivator was between 15 and 18 miles per hour.

Kevin Pazin was a witness to the collision. Kevin testified that he was driving behind the cultivator on the day in question and that the accident occurred at approximately 4:15 p.m. on a clear sunny day. Kevin testified that the cultivator extended two to three feet over the center line. Eugene Pazin, who was also in the car at the time, testified that the cultivator extended three to four feet over the center line. However, on cross-examination, Eugene recalled having given an earlier statement in which he said that the cultivator was across the center line by only one to two feet.

Howard Eugene McKiness, an officer investigating the accident, testified that Kevin reported having seen the van swerve into the cultivator. At trial, Kevin explained that what he told the investigating officer was that the van swerved after colliding with the cultivator. Kevin and Eugene both testified that the van was in its own lane at the time of the collision.

Michael Probst, the owner of the cultivator, testified that Boehne always operated flashing yellow lights located on the tractor when operating the machine on the highway. Boehne also testified that he had activated the flashing yellow lights on the day of the accident.

Plaintiff first asserts that he is entitled to a judgment *n.o.v.* or a new trial on the grounds that the judgment for defendants was against the manifest weight of the evidence. The basic premise of plaintiff's argument is that it is *per se* negligence to collide with an oncoming vehicle on its own side of the road and, therefore, a verdict favoring defendants cannot stand.

■ In Illinois, the present law is that a plaintiff will be barred from recovering damages:

> "[I]f the trier of fact finds that the contributory fault on the part of the plaintiff is more than 50% of the proximate cause of the injury or damage for which recovery is sought. The plaintiff shall not be barred from recovering damages if the trier of fact finds that the contributory fault on the part of the plaintiff is not more than 50% of the proximate cause of the injury or damage for which recovery is sought, but any damages allowed shall be diminished in the proportion to the amount of fault attributable to the plaintiff." (Ill. Rev. Stat. 1991, ch. 110, par. 2—1116.)

This recitation of the law of Illinois reflects what is known as the "modified" form of comparative negligence. The modified comparative negligence statute became effective on November 25, 1986, and applies to negligence actions arising after that date. In the present case, the cause of action accrued on May 31, 1986, because a wrongful death action accrues at the time of death. (*Fetzer v. Wood* (1991), 211 Ill. App. 3d 70.) Therefore, the "pure" comparative negligence law applies.

■ Under the "pure" form of comparative negligence, the plaintiff's damages are simply reduced by the percentage of fault attributable to him. (*Alvis v. Ribar* (1981), 85 Ill. 2d 1, 25.) Thus, a plaintiff who is 90% negligent still may collect a proportional share of damages commensurate with the remaining negligence attributable to defendant. As a result, neither party escapes liability from his own negligent acts or omissions. (*Alvis*, 85 Ill. 2d at 26.) In the present case, the jury apparently found an absence of liability on Boehne's behalf.

In order to prevail on a negligence claim, a plaintiff must show a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by the breach. (*Holbrook v. Peric* (1984), 129 Ill. App. 3d 996, 999.) In addition, in order to recover for wrongful death, a plaintiff must prove that the alleged negligence caused the death of the decedent. *Hare v. Foster G. McGaw Hospital* (1989), 192 Ill. App. 3d 1031, 1034.

■ Plaintiff places much reliance on the case of *Walling v. Lingelbach* (1976), 65 Ill. 2d 244. In *Walling*, two vehicles proceeding in opposite directions on a highway collided with each other. The principal cause of this accident was that the southbound vehicle, driven by Lingelbach, crossed over the center line and struck the northbound vehicle driven by Strahorn. Lingelbach and Strahorn were codefend-

ants in a suit filed by Helen Walling, a passenger in Strahorn's vehicle. On appeal, the appellate court reversed, without remand, holding that the evidence was insufficient to sustain any verdict for Walling against Strahorn. Our supreme court affirmed this holding. Physical evidence supported the conclusion that the accident occurred by the eastern shoulder of Strahorn's lane. Plaintiff here attempts to read the *Walling* court's holding as a declaration that "presence" in another lane is *per se* negligence. We determine that plaintiff's reading of *Walling* is misguided.

First, the facts of *Walling* are distinguishable because the codefendant in *Walling* remained in her lane. Here plaintiff alleges that defendant was outside of his own lane. Second, the reasoning of *Walling* does not support plaintiff's positions. The codefendant in *Walling* was found not liable because she did not proximately cause the accident. As primary evidence of this finding, the court asserted that the controlling issue was that the accident occurred in her own lane. (*Walling*, 65 Ill. 2d 244.) In stating the controlling issue, the court did not purport to set forth a rule that "presence" in another's lane is *per se* negligence. Instead, the court simply determined that, absent other evidence tending to show Strahorn's negligence, she could not be held liable for an accident occurring in her own lane. Therefore, plaintiff is in error to use *Walling* to support his claim that it is *per se* negligence to be in another's lane of traffic.

■ Plaintiff also asserts Boehne is negligent in that State law requires vehicles to drive on the right half of the road. (Ill. Rev. Stat. 1985, ch. 95½, par. 11—701.) While we agree with plaintiff's contention that the Illinois Vehicle Code prohibits the operation of motor vehicles in oncoming traffic lanes under most circumstances, we point out that section 15—101(b) makes provision for temporary transport of implements of husbandry in tow. Section 15—101(b) states in relevant part:

> "The provisions of this Chapter governing size, weight and load do not apply to *** implements of husbandry temporarily operated or towed in a combination upon a highway provided such combination does not consist of more than 3 vehicles ***."

(Ill. Rev. Stat. 1985, ch. 95½, par. 15—101(b).) Thus, as we have already stated in a related case, the temporary transport of wide loads, such as the cultivator, upon the public highways not only was contemplated by the State but also was specifically authorized. (*West v. Deere & Co.* (1990), 201 Ill. App. 3d 891, 901.) Therefore, we cannot hold that defendants' mere "presence" in the opposite lane proximately caused the collision. Neither can we say, in

light of section 15—101(b) that the cultivator's "presence" in the on-coming traffic lane necessarily constitutes a violation of section 11—701.

The question of whether a defendant's conduct proximately caused a plaintiff's injury is one for the trier of fact. (*Turner v. Roesner* (1990), 193 Ill. App. 3d 482, 488.) We can only grant plaintiff a judgment *n.o.v.* if all the evidence, when viewed in the aspect most favorable to defendant, so overwhelmingly favors plaintiff that no contrary verdict based on the evidence could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510.) Viewing the facts adduced at trial in the light most favorable to defendants, we determine that the jury's verdict was reasonable because sufficient evidence exists to support a finding that defendants did not proximately cause the collision.

Plaintiff presented evidence that visibility on the bridge was reduced because of a curve in the bridge itself and because of obstruction of view presented by the walls of the bridge. However, Officer McKiness testified that he had not experienced problems with visibility on the bridge when proceeding from west to east. Other evidence shows that the "curve" is very slight and covers a substantial distance. The height of the tractor and the cultivator was also shown to be significantly higher than the height of the walls of the bridge. In this vein, testimony was provided showing that, in spite of the bridge walls, an attentive driver would have been able to see the farm implement as one approached it, because of the height discrepancy described above. Furthermore, the tractor was proceeding at a very low rate of speed and in a constant unwavering course. Testimony was also provided showing that the tractor was outfitted with reflectors and operating flashing lights at the time of the accident.

In addition, the measurements of the bridge and the vehicles adduced at trial indicate that Boehne drove the tractor such that the cultivator was one foot from the outer curb on Boehne's side of the road. As a result, the cultivator necessarily hung over the center line by approximately three feet. If decedent had also driven his vehicle one foot from his own curb, he would have approximately seven feet two inches remaining between the outside of his van to the outside portion of the cultivator.

Given this evidence, a jury could reasonably find that it was plaintiff's failure to use due care in approaching the farm implement that proximately caused the collision. Indeed, a driver proceeding in his own lane is still under a duty to exercise due care to avoid a collision with a driver proceeding on the wrong side of the road. (*Turner*, 193

Ill. App. 3d at 488.) Therefore, neither a judgment *n.o.v.* nor a directed verdict would be proper when there is evidence supporting a finding that defendant did not proximately cause the collision. To hold otherwise would be to condone negligent or reckless conduct when such circumstances, in reality, require the exercise of due care. It was for the jury to decide whether such recklessness existed and whether it resulted from decedent's inability to control his vehicle in the face of a cognizable danger.

■ Plaintiff next asserts that he was denied a fair trial due to defense counsel's misconduct and trial court error. First, plaintiff asserts that prejudice occurred as a result of defense counsel's claim, made at several points throughout the trial, that the cultivator had a "right" to use the highways of the State of Illinois. Plaintiff also asserts error in the court's behalf due to its denial of plaintiff's motion *in limine* which sought to prevent defendant from stating that he had a "right" to be where he was at the time of the occurrence. Because plaintiff failed to make citations to the record with respect to the location of these comments, we will rely only upon those locations specified by defendant.

The statements made by defense counsel simply assert that as an implement of husbandry, the cultivator had the right to be present upon the highways of this State. We see nothing in defense counsel's statements that would indicate that Boehne had a right to operate the machinery in a negligent manner. We cannot accept plaintiff's argument that the disputed statements were tantamount to a claim that there was no negligence on Boehne's behalf. In our view, section 15—101(b) unambiguously authorizes the use of oversized implements of husbandry upon the highways of this State. Therefore, we find nothing misleading about the use of these statements, nor do we find error in the trial court's refusal to bar the admission of the same.

■ Plaintiff next asserts error due to the trial court's refusal to allow plaintiff to present a theory that defendant was negligent in failing to proceed on an alternate route which would have avoided the transportation of the cultivator on a bridge. The trial court granted defendants' motion *in limine* barring plaintiff from introducing any evidence or argument in support of this theory. The trial court, in granting the motion, noted that proof of negligence is related to the size of the vehicle and the particular road in question rather than to the availability of alternative routes. The court's concern was that to allow such evidence would open the door to arguments asserting liability for failure to engage in a myriad of possible behaviors which could have prevented the collision.

Plaintiff asserts that the presence of a safer mode of alternative conduct has always been a relevant consideration in Illinois on the issue of negligence. To support this proposition, plaintiff cites *Seigel, Cooper & Co. v. Becker* (1899), 83 Ill. App. 600. In *Seigel*, the plaintiff proceeded into the basement of defendant's store in order to retrieve an item from defendant's boiler room. His pathway to the boiler room was a proper one; however, he took an alternate route on his return. This alternative route took plaintiff through a dangerous area of the basement where plaintiff was subsequently injured. The court in *Seigel* declared that it was the plaintiff's duty to take such care for his own personal safety as an ordinarily careful and prudent person would take under like circumstances. (*Seigel*, 83 Ill. App. at 602.) The court held that a person may not recover damages for the consequences of his own "heedlessness." As applied to the present case, we determine that the *Seigel* court's warning against "heedlessness" would bar plaintiff's recovery where the evidence indicates that it was decedent who did not apply due care when approaching a cognizable danger on the highway such as a large tractor pulling a farm implement.

Plaintiff also cites *Klimovich v. Crutcher* (1965), 57 Ill. App. 2d 444, for the proposition that available alternative routes should be taken when they are known to be safe. In *Klimovich*, plaintiff proceeded across a street by foot when he was injured by an oncoming vehicle. A directed verdict was entered in favor of defendant because the court determined that plaintiff should have crossed the road by taking an overpass a short distance away which would have practically assured his safe progress. The court held that, in a place of great danger, an individual cannot remain oblivious to an available alternative course of known safety which is but a short distance away. The basis of the court's decision was that a reasonably cautious person would have taken into consideration the alternative route in the exercise of due care for his own safety. *Klimovich*, 57 Ill. App. 2d at 451.

Again, this reasoning directly applies to decedent's own negligence in failing to respond to a perceived danger blocking his passageway on the road rather than Boehne's justification in choosing a route which he was legally entitled to take. Moreover, we point out that the alternative routes available to Boehne in the present case were not necessarily known to be safe.

In sum, absent further evidence that Boehne's course of action was one involving obvious *and* unreasonable danger to which he did not respond, the admission of evidence of an alternative course of

conduct is not appropriate. The determination of the admissibility of evidence rests in the sound discretion of the trial court and will not be reversed unless that discretion has been abused. (*Country Mutual Insurance Co. v. Adams* (1980), 85 Ill. App. 3d 501.) We do not find that the trial court abused its discretion on this issue.

■ Plaintiff next argues that the trial court erred when it informed a witness of her right to retain an attorney when it became apparent that the witness was making statements that were self-incriminating. As a part of the damages case, plaintiff sought to introduce evidence concerning the decedent's employment. B.D. was an employee at decedent's place of work. On cross-examination, B.D. began to testify that decedent's wife, although not an employee of the business, was receiving checks made out to her rather than her husband. In the jury's presence, the court made the following statement:

> "At this time I have to advise the witness that she has a right not to testify. Any testimony that you might give—and this is before the jury, and it must be made before the jury—might be self-incriminating insofar as the violation of a federal law. You have a right to an attorney. You need not testify further in this proceeding because anything that you might say might incriminate yourself.
>
> You have a right to exercise that right under the State and Federal Constitution as to whether or not you might have done anything with respect to the books in connection with payment to another party for services performed by the decedent in this case or issues which you need not be questioned about nor which you might give answers to.
>
> You have a right to consult with an attorney, and you have a right to exercise all rights guaranteed to you by the Constitution of the State of Illinois. It's your freedom to exercise that right at this time and consult with an attorney. Should you choose to do so, you may step down and consult with your own personal attorney."

Plaintiff asserts that this warning indicated, beyond all doubt, that the trial court believed B.D. was a criminal. We have great difficulty accepting this interpretation of the situation.

First, it should be noted that this witness was not testifying as to issues regarding defendant's liability, but only as to damages. Since the jury never reached the issue of damages in its verdict, it is hard to see how plaintiff was prejudiced by the court's statement. Second, it is well within the court's discretion to advise a witness of her right

not to incriminate herself. (*People v. Pantoja* (1976), 35 Ill. App. 3d 375, 380.) Thus, we find no error.

■ Plaintiff finally presents two objections to instructions that the trial court below presented to the jury. The first instruction reads as follows:

> "There was in force in the State of Illinois at the time of the occurrence in question a certain statute which provided that:
>
> (b) Upon all roadways any vehicle proceeding at less than the normal speed of traffic at the time and place and under the conditions then existing shall be driven in the right-hand lane available for traffic, or as close as practicable to the right-hand curb or edge of the roadway.
>
> If you decide that the defendants complied with or violated the statute on the occasion in question, then you may consider that fact together with all the other facts and circumstances in evidence in determining whether and to what extent, if any, the defendants were negligent before and at the time of the occurrence."

Plaintiff argues that the tendency of this instruction was to create the impression that, if Boehne was driving as close as was practicable to the right-hand curb, he had fulfilled his duty of care. Plaintiff also asserts that the purpose of this statute is to mandate that slower traffic keep to the right so that it may be more easily passed by vehicles moving at the normal speed in the same direction. We find nothing in the language of the statute itself or in the authority cited by plaintiff which would support a conclusion that this statute is *only* intended to apply to situations of same-side passing. The fact that plaintiff alleged negligence on the part of Boehne for his presence in the opposite lane implies that Boehne was not sufficiently to the right side of his own lane. Therefore, the court's instruction on this issue was relevant and justified by the evidence presented. The general rule is that a court must instruct a jury on all issues reasonably presented by the evidence. (*Lounsbury v. Yorro* (1984), 124 Ill. App. 3d 745.) Moreover, the jury was directed to consider this instruction along with all other facts and circumstances. Thus, we determine that the instruction did not confuse or mislead the jury.

■ Plaintiff next asserts that the trial court committed error when it presented Illinois Pattern Jury Instruction, Civil, No. 1.05 (3d ed. 1992) (hereinafter IPI Civil 3d) to the jury without conferring with and outside the presence of counsel. This instruction provides the following:

"The verdict must represent the considered judgment of each juror. In order to return a verdict, it is necessary that each juror agree to it. Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to re-examine your own views and change your opinion if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

You are not Partisans. You are judges—judges of the facts. Your sole interest is to ascertain the truth from the evidence in the case."

In the present case, a short time after retiring for deliberation an inquiry was sent from the jury to the trial judge asking whether its verdict needed to be unanimous. The trial judge answered in the affirmative and submitted the IPI instruction. Plaintiff asserts error in the trial court's submission of this instruction in that the notes for IPI Civil 3d No. 1.05 state that counsel and the court reporter should be present when the instruction is given. Plaintiff then cites *City of Mound City v. Mason* (1914), 262 Ill. 392, for the proposition that it is reversible error for the trial judge to communicate with the jury outside the presence of counsel. Defendant argues that this strict rule no longer applies and that, today, the test is whether the trial court's communication with the jury was calculated to influence the verdict of the jury and whether prejudice occurred as a result of this communication. We agree with defendant.

In *Mound City*, at the request of the jury and in the absence of counsel, the judge went into the jury room and made oral answers to several questions asked him by the jury in regard to the appellant's rights. Our supreme court, holding that it was error for which the judgment would be reversed, asserted that a trial judge should hold no communication with the jury in regard to the instructions in the case except in open court. (*Mound City*, 262 Ill. 392.) The policy behind the requirement of open and notorious communications is that a party should be able to take exception to communications as they occur. *Mound City*, 262 Ill. at 399.

In later years, our supreme court shied away from this strict rule and, instead, began to examine more closely the intent and impact of

such communications. For example, in *People v. Tilley* (1952), 411 Ill. 473, the court announced the general rule that prejudice will not automatically be presumed in cases of unobserved communications between judge and jury. The court stated that the cardinal test is whether the invasion was calculated to influence the verdict of the jury or whether some injury resulted from the communication. We are bound by this reasoning.

Authority which is more recent than that supplied by plaintiff supports the proposition that some prejudice must have occurred before a verdict will be overturned. Defendant cites *People v. Plantinga* (1985), 132 Ill. App. 3d 512, 521, for the proposition that the trial court has much discretion on the matter of issuing a *Prim* instruction. Although there is no evidence that the instruction in *Plantinga* was given outside the presence of counsel, we determine that the case is still relevant. The court in *Plantinga* made the following statements with respect to the *Prim* instructions:

> "The trial court has great latitude as to when a *Prim* instruction should be given. [Citation.] The test is whether, upon examination of all the facts, the language used in the instruction coerced or interfered with the deliberation of the jurors to the prejudice of the defendant or hastened the verdict. [Citation.] There is less danger of coercion when the instruction is given to a jury which has not reached a deadlock." *Plantinga*, 132 Ill. App. 3d at 521.

Indeed, the *Prim* instruction itself was designed to help the jury through a deadlocked situation without coercing it or prejudicing defendant. (*Prim*, 53 Ill. 2d 62.) More recent cases held that the timing of the *Prim* instruction lies within the discretion of the trial court. (*People v. Craddock* (1987), 163 Ill. App. 3d 1039, 1045.) In that the *Prim* instruction itself was designed to avoid prejudice, we cannot see how the plaintiff was in any way injured by submission of this instruction in the present case. Plaintiff presents no evidence that the trial court used the instruction in order to coerce a verdict, nor does plaintiff present argument as to how such prejudice may have occurred. Plaintiff asserts that it was error for the trial court to submit the instruction when the jury had not yet declared itself deadlocked. However, a *Prim* instruction may be given to a jury which is not in fact deadlocked. (*Craddock*, 163 Ill. App. 3d at 1045.) In the present case we do not see how plaintiff's inability to object to the presentation of the *Prim* instruction prejudiced his case. Therefore, we cannot accept plaintiff's blanket assertion that all communications between judge and jury in the absence of counsel should result in a retrial.

Admittedly, the notes for IPI Civil 3d No. 1.05 set forth guidelines as to how the instruction should be administered. However, the language in the notes is neither mandatory in nature nor authoritative in substance. Therefore, although it may have been better for the court below to deliver the instruction after conferring with counsel, we will not reverse in the absence of a showing of prejudice.

The judgment of the circuit court of Kane County is affirmed.

Affirmed.

UNVERZAGT and WOODWARD, JJ., concur.